ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. RAGSDALE, PRICE & CO. (No. 5604.)

(Court of Civil Appeals of Texas. Austin. March 15, 1916. Rehearing Denied April 19, 1916.)

1. FRAUDS, STATUTE OF &#9111;17—PROMISE TO ANSWER FOR DEBT OF ANOTHER.

An oral promise by the defendant railroad's representative that the defendant would see that plaintiffs were protected with regard to credit which had been given to defendants' section hands, being an oral promise to pay the debts of other persons, was within the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 13, 16, 17; Dec. Dig. &#9111; 17.]

2. PRINCIPAL AND AGENT &#9111;164(1)—AUTHORITY—RATIFICATION OF ACTS.

While, as a general rule, ratification partakes of the elements of estoppel, where that

is not the case, something must have been done which, if ratified, would create liability.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 622, 624, 625; Dec. Dig. ☞164(1).]

3. FRAUDS, STATUTE OF ☞23(4)—PROMISE TO ANSWER FOR DEBT OF ANOTHER—CUSTOM—CREATION OF CONTRACT.

A uniform custom of the defendant railroad company to make deductions from the wages of its employés in favor of persons having claims against them, in accordance with a statement in a time book constituting an order upon the company, and signed by the employés, which was done for the accommodation of the employés and without consideration, did not constitute an assumption of primary liability by the railroad company for goods sold by the plaintiff, relying on this custom, to its section gang at the request of the section foreman.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 18, 19; Dec. Dig. ☞23(4).]

4. APPEAL AND ERROR ☞263(1)—PRESENTATION IN LOWER COURT OF GROUNDS OF REVIEW—EXCEPTIONS.

Where a statute requires a complaining party to except to the action of the trial court in giving or refusing instructions, an indorsement by the court at the bottom of a requested instruction that it is refused, and defendant excepts, objections to the court's charge presented in writing being in a like manner overruled and exceptions noted, constitutes substantial compliance with the statute.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1516; Dec. Dig. ☞263(1).]

Appeal from McLennan County Court; Geo. N. Denton, Judge.

Action by Ragsdale, Price & Co. against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiffs, and from an order overruling a motion for new trial, defendant appeals. Reversed and rendered.

E. B. Perkins, of Dallas, and Scott & Ross, of Waco, for appellant. Gross & Street and G. W. Barcus, all of Waco, for appellees.

KEY, C. J. We copy from appellant's brief the following substantially correct statement of the nature and result of this suit:

"By original petition filed April 28, 1914, in the county court of McLennan county, Tex., appellee sought to recover of the appellant the sum of $212.40, same being in the nature of an open account for goods, wares, and merchandise furnished by appellee to the employés of the appellant at the alleged instance and request of appellant, and which amount appellants had been requested to pay. On March 22d appellant by an amended answer denied that the goods, wares, and merchandise alleged to have been furnished were furnished at the instance or request of itself, or any of its authorized agents or representatives, and in separate paragraph denied each and all of the allegations set forth in the separate paragraphs of plaintiffs' petition. And by special answer appellants alleged that it was engaged in operating a railroad, and in connection therewith it owned what is commonly called a section house, which was in charge of a section foreman, who was an employé of the appellant, and whose duty it was to employ the necessary labor to maintain, repair, and take charge of the defendant's railroad track on and over the section to which he was assigned; that said section boss or foreman was permitted by appellant to use and occupy the section house free of charge; that said section foreman carries on a boarding house in said section house wherein and by which he boards the section hands under his supervision and control while engaged in performing services for the appellant; that appellant was in no manner interested in said boarding house, financially or otherwise; that as a matter of accommodation in settlement of the amounts due by appellant for services rendered by the various section hands by said section foreman appellant deducts from their pay whatever amount they and the foreman agree to be due the foreman by said employés for their board during the time stated; that said sum of money is paid by appellant directly to the foreman; that said arrangement was in accordance with an agreement and understanding in each instance arrived at by the foreman and the men working under him, and appellant was in no manner interested in said transaction, performing this service purely as a matter of convenience and accommodation; that said foreman purchases his own goods, wares, and merchandise, such as may be necessary for him in the conducting and carrying on of said boarding house, and as a matter of convenience and accommodation appellant deducts and withholds from the amount due said foreman, as well as his own salary, monthly, on the occasions of a settlement, to pay off and discharge the claims and demands that are made against the said foreman, and to which said foreman assents and agrees as being correct to the extent only of the amount that may be ascertained to be due said foreman by appellant, and no more, and in this arrangement appellant is in no manner interested, the same being done and performed purely as a matter of accommodation to the foreman, and to those with whom he deals; that if said foreman or any other person obtained goods, wares, and merchandise from appellees, purporting to have authority to do so at the instance of appellant, the same was without authority, and was in no manner binding upon appellant.

"Appellant further alleged that, at the time the goods, wares, and merchandise are alleged to have been furnished by appellee, its section foreman was not engaged in boarding the men under his employ; that said men so employed were living at their own homes in various places in and around the city of Waco, and purchased their own supplies from Ragsdale, Price & Co., and also from one Joe Pinto, and it was understood between the said men so employed and the said Ragsdale, Price & Co. and the said Pinto that the amount due them, or either of them, by said employés, respectively, should be reported by the foreman of the defendant company, and the defendant company should be governed by said report so made by said foreman in making its deduction from the amount to be paid said employés, said deduction to be made in favor of the party shown by said report to hold the claims against the said employés; that for the month of September, 1913, which was the month alleged in plaintiffs' petition the goods, wares, and merchandise were furnished, it did report to appellant the amount of time put in by said employés, respectively, and did also report to appellant the amount due by said employés for advancements, and that the same was due for said month to Joe Pinto, and appellant in accordance with said report made said deductions from the amount due by appellant to said employés in favor of Joe Pinto, and said amounts were paid to said Pinto; that appellant received no benefit of any character from said arrangement, and that it assented thereto as a matter of accommodation to said employés, respectively, and to said Ragsdale, Price & Co. and to said Pinto. This answer was sworn to as required by law.

"March 22, 1915, appellees filed their supplemental petition, in which they alleged that as to the particular bills sued for in this cause, before any part of the month's wages had been paid, appellants were notified of the bill, and appellant ratified the same, and agreed and promised to pay, and authorized the same to be charged to the said parties for and on behalf of appellant.

"March 22, 1915, appellant filed supplemental answer, in which it denied under oath each and every allegation set forth in appellee's supplemental petition, and it further alleged that, if any person did ratify or attempt to ratify any alleged obligation to appellees for goods, wares, and merchandise furnished the parties mentioned in his petition, such ratification or promise, if any, was without consideration, and therefore void as against appellant. And it was further alleged therein by appellant that if such ratification or promise to pay said obligation upon the part of appellant, or attempted to be made by any person whatsoever, the same was a verbal promise and a verbal ratification, and a promise to become responsible for and to pay the debt of a third person, and was therefore in violation of the statute of frauds of the state of Texas, and therefore void and nonenforceable against this defendant.

"On March 22, 1915, said cause went to trial. Thereafter on said date a verdict was rendered in favor of the plaintiffs for $212.40. Thereafter in due time appellant filed its motion for new trial, which was on the 17th day of April, 1915, overruled. Appellant perfected its appeal by executing and filing its appeal bond April 23, 1915."

## Opinion.

The first assignment of error complains of the action of the trial court in refusing to instruct a verdict for appellant, and we sustain that assignment. The undisputed proof shows that, while appellees sold certain supplies to appellant's employés, constituting a section gang, and expected to receive pay therefor from appellant, they had no authority to charge the goods to appellant, and no one authorized to do so promised in writing that appellant would pay for the goods. It may be admitted that the proof shows that there was a custom in vogue upon appellant's road (though it did not prevail at all points) for the section foreman, if he boarded the hands who worked under him, to procure from them, by their signatures upon what was called the time book, what in legal effect constituted an order upon the railroad company to pay to the foreman or section boss the amount due him at the end of the month for boarding section hands; and when the employés preferred to maintain themselves the foreman generally made arrangements with one or more merchants by which they could purchase supplies, and in making up his time book, which constituted a monthly report to the company, it would be so framed and signed by each employé as to authorize the company to deduct from the total amount of wages due each employé the amount owing by him to the merchant who had furnished the supplies; and when that was done the company would send a check to its local agent, to be delivered to the merchant in payment of his account against the section hands, and the remainder would be paid by

the company to the employés entitled thereto. This was done for the accommodation of the employés, and the railroad company derived no direct pecuniary benefit therefrom, but indirectly it probably was beneficial to the company. The time book referred to was made up by the section foreman, but each section hand signed his name in such place as indicated that the book correctly showed the amount the company owed each employé, and the amount to be deducted therefrom, and in whose favor the deduction was to be made.

In the present case the proof shows that the members of the section gang had been making purchases from appellees and part of the time from one Joe Pinto for the months of June, July, August, and September, 1913; that during the month of September appellees furnished to the section hands supplies, etc., amounting to $212.40, for which they had never been paid, and for which amount they recovered judgment in this case. The undisputed proof shows that the time book for September, 1913, which was sent to headquarters by the section foreman, did not have appellees' name upon it, and did not authorize appellant to deduct anything in favor of appellees from the amount owing its employés. On the contrary, it showed that certain amounts were to be deducted from the amounts owing by the company to the section gang, and that the deductions so made were to be paid to Joe Pinto; and the railroad company settled with its employés upon that basis and paid to Joe Pinto the amount for which the employés had, in legal effect, given him an order upon the company.

[1] Appellees based their right to recover upon two contentions, which are: (1) That by the custom heretofore referred to the railroad company became primarily liable to appellees at the request of the section foreman who sold to the members of the section gang the supplies referred to; and (2) that, if such was not the case, then the railroad company ratified what had been done by the section foreman and by the employés and thereby became liable. While the proof fails to show that the section foreman authorized appellees to charge the supplies referred to to appellant, still, if he had undertaken to do so, the proof fails to show that he had authority to so bind appellant.

As to the question of ratification, S. B. Price, one of the plaintiffs, testified that he called up Mr. Earle, appellant's superintendent, on the telephone, and stated to him that he had become suspicious of Wedgeworth, the section foreman, and desired to go to Tyler to see Mr. Earle about it; that Mr. Earle informed him that he was about to leave for St. Louis, but would send his assistant, Mr. Callahan, to Waco to see Mr. Price. In a day or two Mr. Callahan went to Waco, investigated the matter, and made a report to Mr. Earle. Mr. Price testified that Mr. Callahan told him that, no matter how the time

book might be made up for September, the company would see that appellees were protected. It was not shown that any additional goods or supplies were furnished to the section hands after the interview referred to and in reliance thereon; on the contrary, it appears with reasonable certainty that the conversation mentioned occurred on the 26th day of September, and that nothing was furnished by appellees after that time. The undisputed proof shows that Mr. Earle sent Mr. Callahan to make an investigation and report to him, and that he did not authorize him to undertake to obligate the company for the payment of any debt, and the proof fails to show that he had authority so to do. Furthermore, the promise referred to, if made, was not in writing, and the most that can be said of it in behalf of appellees is that it constituted a promise to pay the debts of other persons, and, not being in writing, it comes within the statute of frauds, and is not binding.

[2, 3] Counsel for appellees rely upon the testimony referred to as supporting the verdict and judgment upon the theory of ratification, but the testimony fails to show that Callahan had any authority to bind appellant upon that score. In fact, we fail to see any ratification in the case. As a general rule, ratification partakes very much of the elements of estoppel; but, where that is not the case, something must have been done which, if ratified, would create liability. The proof fails to show elements of estoppel predicated on Callahan's statement, and also fails to show that the section foreman, or any one else, did or said anything which would justify appellees in believing that appellant was to become primarily liable for goods to be sold by them to the members of the section gang, and the testimony of Mr. Price himself tends to show that they expected to get their pay, as they had on former occasions, by the foreman and the employés under him so making up the time book for September as to constitute an order in their favor for the amount of supplies which they had furnished to each employé. The time book in question was not so made up, but, on the contrary, it was so prepared as to constitute orders given by some employés to make certain payments to Joe Pinto. The undisputed proof clearly shows that the custom in reference to making deductions in favor of persons having claims against the employés was uniform, and that such deductions were made only in accordance with the time book; and the testimony fails entirely to show that the foreman, or any one else other than Callahan, ever undertook to bind appellant otherwise than in accordance with such custom, and therefore there was nothing to be ratified other than the custom referred to, and, according to that custom, appellant was not liable. Hence we conclude that the trial court should have given the requested instruction, directing a verdict for appellant.

[4] We note appellees' objection to the effect that the record fails to show that a bill of exception was reserved to the action of the court in refusing to give the instruction referred to. At the bottom of that instruction is the following indorsement:

"Refused, and defendant excepts.
"Geo. N. Denton, Judge."

Appellant also presented to the trial court objections in writing to the court's charge, the objection being that there was no issue to submit to the jury, as the undisputed proof showed that appellant was not liable, which objections were in like manner overruled and exception noted. While the statute now in force requires a complaining party to except to the action of the trial court in giving or refusing instructions, we think the course pursued in this case constitutes substantial compliance with the statute.

Our conclusion is that the judgment of the court below should be reversed, and judgment here rendered for appellant; and it is so ordered.

Reversed and rendered.